Caroline Larsen, SBN 022547
Douglas (Trey) Lynn, SBN 028054
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
2415 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone:  602-778-3700
Fax:  602-778-3750
caroline.larsen@ogletree.com
trey.lynn@ogletree.com

*Attorneys for Defendants Oracle Corporation*
*and Oracle Financial Services Software, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Catherine M. Beardsley, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Oracle Corporation, a corporation;<br>Oracle Financial Services Software, Inc., a<br>corporation, and Does 1-25, inclusive,<br><br>Defendants. | No. CV-19-2985-PHX-JJT<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

**STATEMENT OF FACTS**

1.      Oracle Corporation ("Oracle") and Oracle Financial Services Software ("OFSS") are equal opportunity employers that have policies prohibiting harassment or discrimination based on gender and other protected characteristics.[1] [Code of Ethics and Business Conduct, attached hereto as Exhibit 2.]

2.      OFSS hired Beardsley as an Application Sales Representative ("ASR") on December 15, 2011. [Complaint ¶ 10.] At all relevant times, Beardsley was employed by OFSS. [Yesinko Depo. 187:18-188:1, Exh. 1.]

---

[1] Oracle is a majority owner of OFSS and policies were the same between Oracle and OFSS. [Deposition of Jason Yesinko ("Yesinko Depo.") at p. 49:3-10, attached hereto as Exhibit 1.]

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

3.     OFSS is part of Oracle's Financial Services Global Business Unit ("FSGBU") and focuses on providing information technology solutions to customers in the financial sector. [Yesinko Depo. at pp. 36:11-39:2, Exhibit 1.]

4.     After being hired, Beardsley reported to Prince Varma, Area Vice President, and later reported to Jason Yesinko. [Deposition of Catherine Beardsley ("Beardsley Depo.") at p. 38:4-18, attached hereto as Exhibit 3.]

5.     Varma participated in interviewing Beardsley during the hiring process and offered his opinion that she would be a wonderful addition to the team. [Deposition of Prince Varma ("Varma Depo.") at pp. 38:13-20, 39:12-15, attached hereto as Exhibit 4.]

6.     At all relevant times, Beardsley reported to Yesinko as part of the financial crime and compliance software group, selling software to financial institutions. [Yesinko Depo. at pp. 7:23-8:11, 39:12-16, Exhibit 1.]

7.     Yesinko specifically requested that Beardsley be assigned to his team. [Yesinko Depo. at pp. 219:13-220:2, Exhibit 1.]

8.     While working with Yesinko, Beardsley primarily sold software dedicated to financial services institutions' ability to comply with regulations and prevent illegal acts such as money laundering. [Beardsley Depo. at pp. 55:18-56:8, Exhibit 3.]

9.     All ASRs have annual sales targets they must meet and their performance is judged based largely on their ability to meet their numbers. [Yesinko Depo. at pp. 252:23-256:13, Exhibit 1.]

10.     Beardsley met her sales quotas in fiscal year 2014 ("FY14")[2] in which she met her sales quota of $2,761,637 with sales of $3,308,490, and in FY15 in which she met her quota of $2,932,880 with sales of $3,484,250. [Sales Reports, attached hereto as Exhibit 5; Beardsley's Compensation Plans, attached hereto as Exhibit 6.]

11.     However, in FY16, Beardsley's sales dropped approximately 51% from the prior year to $2,306,492, falling short of her goal of $3,118,320. [Exh. 6.]

---

[2] Oracle and OFSS operate on a fiscal year that begins on June 1. FY14 began on June 1, 2013 and ended May 31, 2014. [Yesinko Depo. at p. 24:14-18, Exhibit 1]

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

12. Yesinko and Varma were concerned with her performance because her sales in FY16 came from just two deals, both of which required a significant amount of sales management support to drive to closure. Beardsley tended to focus only on a handful of accounts, limiting the potential for additional sales. [Beardsley's 10/19/16 PIP, attached hereto as Exhibit 7; Yesinko Depo. at pp. 137:9-146:13, 256:18-257:9, Exhibit 1.] Beardsley had also inherited both deals from the sales department, as opposed to having identified the opportunities herself. [Beardsley Depo. at p. 80:12-16, Exhibit 3; Yesinko Depo. at pp. 19:3-22:23, Exhibit 1; Varma Depo. at pp. 142:21-145:9, Exhibit 4.]

13. Beardsley's projected business opportunities for FY17 (known as her "pipeline") were only $4,100,000. [Beardsley's 10/19/16 PIP, Exhibit 7.]

14. ASRs typically only close about 20-25% of the potential deals in their pipeline; so ASRs are required to maintain pipeline opportunities that are at least four times their annual sales goal a robust pipeline to ensure future sales remain on track with their goals. [Yesinko Depo. at pp. 252:23-255:5, Exhibit 1.] ASRs must also maintain a clean pipeline in Fusion (Oracle's software for tracking ASR pipelines) – meaning a pipeline that contains potential deals that are still viable sales opportunities and reflect an updated status. [*Id.*]

15. Beardsley's anemic pipeline was cause for concern because it indicated that she had few options for future deals and was more likely to continue missing her sales targets. [Yesinko Depo. at pp. 255:11-256:13, Exhibit 1; Varma Depo. at pp. 105:14-106:8, Exhibit 4.]

16. Due to concerns with her pipeline and sales abilities, Yesinko placed Beardsley on a PIP on October 19, 2016. [Beardsley's 10/19/16 PIP, Exhibit 7.] The PIP noted that Beardsley's FY17 revenue quota was $2.6 million and she was required to maintain four times that amount of potential business in her pipeline. [*Id.*]

17. At the time of the PIP, Beardsley had only $4,100,000 in her pipeline, $3,000,000 of which was for one deal. [Beardsley Depo. at p. 137:5-13, Exhibit 3.] The

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1    PIP also required her to provide reporting and deal status updates. [Beardsley's 10/19/16

2    PIP, Exhibit 7.]

3         18.    The purpose of the PIP was not to discipline Beardsley, but rather to help

4    Beardsley remediate her performance issues and build her pipeline. [Yesinko Depo. at p.

5    65:15-16, Exhibit 1.] However, Beardsley never asked for additional help or training

6    resources to meet her quota. [*Id*. at p. 271:11-17.]

7         19.    While on the PIP (and before), Beardsley had access to the same training and

8    support as all of the other ASRs. She participated in many presentations, group trainings,

9    product training, and face-to-face sessions with Prince Varma and Jason Yesinko. [Varma

10   Depo. at pp. 108:25-109:19, Exhibit 4.] She attended a week-long training course run by

11   Varma and had access to all of the sales material documentation that was available for

12   Oracle and OFSS products. [*Id*.]

13        20.    Yesinko checked in with Beardsley and the rest of the sales team periodically

14   to assess how they were progressing. [Varma also emphasized that the PIP was to try to

15   help Beardsley and provide her with support. [Varma Depo. at p. 198:15-23, Exhibit 4.]

16   He spoke to Beardsley on the phone to do deal reviews and provide recommendations and

17   strategy, and he went to customers at her request and would call clients on her behalf. [*Id*.

18   at pp. 199:16-200:2.] After she was placed on the PIP, he tried to help her construct an

19   elevator pitch and value proposition. [*Id*. at p. 200:6-11.]

20        21.    Other Oracle and OFSS employees complained about Beardsley's abilities

21   as a salesperson. Yesinko fielded several concerns from other employees about Beardsley's

22   ability to manage a sales cycle and to effectively deliver value propositions and content to

23   clients. [Yesinko Depo., pp. 257:20-258:24, Exhibit 1.]

24        22.    Yesinko received complaints and concerns about Beardsley's abilities and

25   performance from presale engineers Yogi Singh, Garima Chaudry, Rohan Chopra, and

26   Jason Smorack. [Yesinko Depo., p. 258:4-24, Exhibit 1.]

27        23.    Varma also had serious concerns about Beardsley's performance and sales

28   abilities. He worked closely with Beardsley on a deal for Citi Corp., during which his level

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

of involvement went beyond what he would have expected when working with someone of Beardsley's experience and tenure. [Varma Depo., p. 86:14-20, Exhibit 4.] Beardsley involved him in meetings that he believed an experienced salesperson should have been able to handle alone. [*Id*.] Beardsley often asked him basic questions about topics that should be familiar to senior sales person; and she required much more support than he would have expected. [*Id*. at pp. 88:3-89:6.]

24.     In the summer of 2016, prior to being placed on the PIP, Beardsley attended a sales kickoff meeting in Montreal, Canada, during which she participated in an interactive sales training during. The training involved a role-playing situation in which Beardsley and other ASRs created a pitch for a product and presented it. A panel of Oracle and OFSS managers rated Beardsley's performance as below expectations, indicating that Beardsley's sales ability was in great need of improvement. [Beardsley's 10/19/16 PIP, Exhibit 7; Beardsley Depo. at pp. 64:12-21, 65:2-70:25, Exhibit 3.]

25.     On January 24, 2017, John Groetch from Lombard Risk, one of Oracle's outside business partners, sent an email to Prince Varma discussing a potential deal with Citizens Financial Group ("Citizens"). He specifically requested that Beardsley not be assigned to the Citizens account and criticized her prior performance. While Mr. Groetch's assessment of Beardsley's abilities as a salesperson was very concerning to Varma, he continued to let her work on the Citizens deal. [1/24/17 Email, attached hereto as Exhibit 8; 11/15/16 Email, attached hereto as Exhibit 9.]

26.     In addition to negative feedback about her performance, Beardsley also failed to meet any of the requirements of her PIP. By her own admission, she focused her attention only on the Citizens deal and did not meet the requirement of maintaining four times her annual sales quota in her pipeline. [Beardsley Depo. at p. 177:12-17, Exhibit 3.]

27.     During her employment with OFSS, Beardsley's level of management involvement in her deals did not decrease and she did not have proficiency in value proposition. [Varma Depo. at pp. 203:9-204:10, Exhibit 4.] Additionally, she did not gain

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

proficiency with Fusion (the systems used to track ASRs' pipelines) or Oracle's deal management system. [*Id*. at p. 204:12-17.]

28.     At the end of May 2017, Varma had a phone call with Sue Carmody from Citizens, during which Ms. Carmody informed Varma that Citizens would no longer do the deal with Oracle. Beardsley was unable to salvage the potential sale. [Varma Depo. at pp. 125:13-127:20, Exhibit 4.]

29.     For FY17, Beardsley had sales of only $483,696, which was only 15% of her sales target of $3,180,540. Beardsley had only $1,550,001 in her pipeline for FY18 with a FY18 sales target of $4,392,000, which should have equated to a pipeline of at least $17,568,000. Beardsley's pipeline was short by over $16 million. [Sales Report, Exhibit 5; Beardsley's FY 2018 Compensation Plan, attached hereto as Exhibit 10.]

30.     After eight months on the PIP, OFSS terminated Beardsley's employment on June 30, 2017 after she failed to meet the requirements of her PIP, once again failed to meet her sales quota, and failed to maintain required pipeline opportunities. [Complaint ¶ 23, Doc. 1, Yesinko Depo at 264:4-271:17.] Yesinko made the decision to terminate Beardsley in conjunction with Varma and Dawn Capriotti and Shaheen Kauser from Human Resources. [9/9/16 Email, attached hereto as Exhibit 11.]

31.     After Beardsley's termination, Varma made concerted efforts to try to hire female employees for his sales team. He personally reached out to multiple women to see whether they were interested in the open positions. [Varma Depo. at pp. 170:7-176:17, Exhibit 4.] However, those individuals were happy where they were and Yesinko received only applications from male employees. [*Id*.; Yesinko Depo. at p. 115:7-10, Exhibit 1.]

32.     After Beardsley's termination, Yesinko and Varma worked to resurrect the Citizens deal. Both personally spent a significant amount of time working to restructure the deal so that it would be acceptable to Citizens. [Yesinko Depo. at pp. 237:18-238:18, Exhibit 1.] This required a complete restructure of the deal. [*Id*. at p. 239:9-17.]

33.     Beardsley acknowledged that, at the time of her termination, the Citizens deal had to be completely restructured with Citizens' business partner Infosys, including price

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 East Camelback Road
Phoenix, AZ 85016
TELEPHONE: 602-778-3700

negotiation. [Beardsley Depo. at pp. 127:18-129:12, Exhibit 3.] She does not know what happened with the deal after her termination other than that Oracle eventually did close a deal with Citizens. [*Id.*]

34.     Varma and Yesinko were eventually able to close the Citizens deal after a significant amount of work. After the deal closed, Varma and Yesinko both received their management commissions on the deal, which were the same amounts they would have received if Beardsley had still been employed and negotiated the sale herself. [Varma Depo. at p. 155:10-14, Exhibit 4; Yesinko Depo. at p. 240:16-22, Exhibit 1.]

35.     Additionally, no other ASR was assigned to the account, so no employee received the commissions that Beardsley would have received if she had been employed when the deal closed. The Citizens account was assigned to Tammy Sterno (female sales manager) and a salesperson after the deal closed. [Varma Depo. at pp. 127:25-128:11, Exhibit 4.]

36.     In FY17, all employees in Prince Varma's sales team who obtained less than 100% of their sales attainment either resigned, were terminated, or transferred out of the sales organization. [Varma Sales Organization, attached hereto as Exhibit 12.] Only four employees remained in Prince Varma's sales organization after FY17, and each had sales attainment of over 200% for FY17 and one individual had sales attainment of 340.43%. [*Id.*]

37.     Beardsley claims that male employees Marcos Laredo, Bijan Ofati, James Simpson, and Joe Sinzer were treated more favorably than her. [Beardsley's Interrogatory Responses at pp. 13-16, attached hereto as Exhibit 13.]

38.     Bijan Olfati was a sales manager, not an ASR. [Varma Depo. at p. 52:17-21, Exhibit 4.]

39.     Yesinko placed Mr. Sinzer on a PIP on June 16, 2017. [Sinzer's 6/16/17 PIP, attached hereto as Exhibit 14.] Mr. Sinzer's performance suffered from many of the same issues as Beardsley's. For example, his pipeline at the time of the PIP was $2,600,000 when it should have been $10,800,000. [*Id.*] His attainment for FY17 was only 19% and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

consisted of two deals for the same account that were not new sales, but were license true ups.[3] [*Id*.] Yesinko also noted that Mr. Sinzer required higher than expected management support to close deals. [*Id*.]

40.    Sinzer elected to voluntarily resign his employment before he was terminated. [Varma Depo. at p. 148:1-12, Exhibit 4.]

41.    Yesinko did not place Mr. Sinzer on a PIP at the same time as Beardsley because, at the time, Mr. Sinzer had a very robust pipeline and appeared well-positioned to close a substantial amount of business in the coming months. [Sinzer Pipeline Report, attached hereto as Exhibit 15; Yesinko Depo. at pp. 101:4-103:5, Exhibit 1.] Mr. Sinzer's pipeline for FY17 had $23,773,013 in expected business – more than twice the amount in Beardsley's pipeline and more than any other ASR on his team. [Sinzer Pipeline Report, Exhibit 15; Beardsley 10/19/16 PIP, Exhibit 7.]

42.    Beardsley claims that if she had been allowed to continue working through the first quarter of FY18, she would have closed the Citizens deal, earned a commission, and made her sales quota for the year. [Beardsley's Interrogatory Responses at pp. 13-16, Exhibit 13.]

43.    Beardsley had worked on the Citizens deal for over two years without closing it and, at the time of her termination, Citizens had said it would not go through with the deal and there was no agreement about price in place. [Varma Depo. at pp. 125:13-126:2, Exhibit 4; Beardsley Depo. at pp. 123:18-126:2, 127:18-129:2, Exhibit 3.]

44.    While Yesinko and Varma were ultimately able to close a deal with Citizens, it was completely different from the deal Beardsley had worked on, and it required a significant amount of time from both Yesinko and Varma. [Varma Depo. at p. 126:3-20, Exhibit 4; Yesinko Depo. at pp. 237:18-238:18, 239:19-240:5, 240:9-15, Exhibit 1.]

45.    At the time of her termination, Beardsley had started working on a deal with Silicon Valley Bank. However, the deal was identified by Chris Reynolds and Beardsley

---

[3] A "true up" is not a new sale, but is the sale of additional licenses for an existing customer. [Yesinko Depo. at pp. 125:11-126:9, Exhibit 1.]

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

had inherited the account because Reynolds was no longer eligible to sell financial crime and compliance products. Beardsley received the account 30 days before her termination and had only forwarded initial paperwork to the processing team. She had done virtually no work on the deal herself. [Yesinko Depo. at pp. 240:23-242:9, 243:3-244:15, Exhibit 1.]

46.     Similarly, Marcos Laredo was not similarly situated to Beardsley. He worked on a different sales team and sold products in Mexico, rather than the United States. [Varma Depo. at p. 94:5-9, Exhibit 4.] Additionally, he was treated equally to Beardsley. Around the time he was failing to meet sales goals, he was transferred to a different sales organization, after which we was placed on a PIP and then terminated. [*Id*. at pp. 148:23-149:5.]

47.     James Simpson had only recently joined the sales team when Beardsley was terminated. [Varma Depo, at pp. 139:3-140:10, Exhibit 4.] Mr. Simpson worked with Varma's sales team for a very short time, during which he sold virtually nothing. Varma verbally counseled Mr. Simpson about his performance and Mr. Simpson elected to change to a different position outside of sales before he was placed on a PIP. [*Id*. at 132:2-24.]

48.     Additionally, Yesinko placed Robert Dunlap on a PIP in early July 2016 for failure to attain sales quota and pipeline goals. Mr. Dunlap resigned within a month of being placed on the PIP. [Yesinko Depo. at pp. 63:4-64:4, Exhibit 1.]

49.     Varma regularly had conversations with his team members who were underperforming, regardless of gender. [Varma Depo. at pp. 139:3-140:10, Exhibit 4.]  On April 26, 2017, he sent an email to Dawn Capriotti asking about firing 50% of his sales team, including three men and two women. [4/26/17 Email, attached hereto as Exhibit 16; Defendants' Response to Interrogatory No. 22 at pp. 9-10, attached hereto as Exhibit 17.]

50.     Varma informed Yesinko that he would be placed on a PIP in 2018 and Yesinko elected to resign his employment with Oracle in July 2018 before he could be placed on a PIP. [Varma Depo. at p. 149:7-15, Exhibit 4.]

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

51.     Varma admits that Tom List, who was hired to replace Mary Mowry, was "a horrible hire," and bad sales person. As a result, he was not with the company long. [Varma Depo. at p. 172:3-25, Exhibit 4.]

52.     Beardsley never requested or applied for a transfer to another position with Oracle or OFSS during her employment. [Beardsley Depo. at pp. 188:18-21, 189:10-21, Exhibit 3.]

53.     Beardsley was friends with Yesinko and both Varma and Yesinko liked Beardsley on a personal level. [Beardsley Depo. at p. 200:1-3, Exhibit 3; Varma Depo. at p. 89:17-18, Exhibit 4.]

54.     Beardsley admits that she was never denied a reimbursement. [Beardsley Depo. at p. 206:10-19, Exhibit 3.]  She even admits that Varma's assistant, Julie Fernandez, offered to help her submit reimbursements and ended up submitting expenses on her behalf. [*Id.* at pp. 210:9-211:12.]

55.     The only "intimidation" she claims occurred was Yesinko telling all members of the team to be conscious of their expenses during a certain time of year. He used the example of making the decision to have a hamburger instead of a steak. [Beardsley Depo. at pp. 206:20-24, 212:24-213:11, Exhibit 3.] This guidance applied to everyone on his team, not just female employees. Varma confirmed that there are certain times during the year when all sales employees are asked by leadership to be conscious of travel and exercise good judgment regarding expenses. [Varma Depo. at p. 78:3-20, Exhibit 4.]

56.     Beardsley also claims she lost commissions due to reassignment of accounts. [Beardsley Depo. at pp. 90:2-91:10, Exhibit 3.] However, she never claims that this did not occur with male employees and there is no evidence that was the case. Territories were assigned to ASRs by Oracle's territory management group. [Varma Depo. at p. 146:12-24, Exhibit 4; Yesinko Depo. at p. 21:2-10, Exhibit 1.]

57.     Accounts are distributed geographically and the territory management group cannot modify territories if it has greater than 5% impact on an ASR's pipeline. [Varma Depo. at pp. 142:21-145:9, Exhibit 4.]

58.     Beardsley claims she was denied the resources offered to male employees because when she was attending a sales meeting in New York Varma, Yesinko, and Michael Morais stayed longer than her at a bar. [Beardsley Depo. at pp. 161:11-162:20, Exhibit 3.]

59.     Beardsley claims her KeyBank account was reassigned to a Key Account Representative (the correct term is Key Account Director), who took over the account for sales representatives across different business units. But, she concedes that the individual who took over the KeyBank account did not take over her responsibilities. [Beardsley Depo. at p. 91:11-24, Exhibit 3.]

60.     Yesinko placed ASR Mary Mowry on a PIP the same day as Beardsley. [Mowry's 10/17/16 PIP, attached hereto as Exhibit 18.] Mowry was suffering from many of the same performance issues as Beardsley when she was placed on a PIP. In FY16, Mowry had only 50% attainment of her sales goal, and all of that came from one deal that was initiated the prior fiscal year and required a significant amount of sales management support to drive to closure. [*Id.*] Through the first quarter of FY17, Mowry had only 9.5% sales attainment. Mowry's pipeline was also anemic, showing only $3,000,000 in potential sales instead of the required $9,920,000. Mowry's presentation at the sales kickoff meeting in Montreal had also been ranked below expectations by the evaluation team. [*Id.*]

61.     Mowry also failed to meet the PIP requirements and failed to obtain her sales target for FY17, making sales of only $940,000. [Mowry's 10/17/16 PIP, Exhibit 18.]

62.     She claims that Yesinko would use the "F-word" and "S-word" during conference calls. [Beardsley Depo. at p. 192:6-15, Exhibit 3.] However, she does not allege that such language had anything to do with gender, nor did it have sexual connotations. She also admits she used the same words in a work environment. [Beardsley Depo. at pp. 197:25-198:18, Exhibit 3; Yesinko Depo. at pp. 213:1-214:21, Exhibit 1.]

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

RESPECTFULLY SUBMITTED this 13th day of July 2020.

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.


By:   s/ Caroline Larsen
      Caroline Larsen
      Douglas Trey Lynn
      2415 East Camelback Road, Suite 800
      Phoenix, Arizona 85016

      *Attorneys for Defendants*

43486532.1