**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Catherine M. Beardsley,

    Plaintiff,

v.

Oracle Corporation, *et al.*,

    Defendants.

No. CV-19-02985-PHX-JJT

**ORDER**

At issue are the following Motions: Defendants Oracle Corporation ("Oracle") and Oracle Financial Services Software, Inc.'s ("OFSS") Motion for Summary Judgment (Doc. 84, Defs.' MSJ), to which Plaintiff Catherine M. Beardsley filed a Response (Doc. 98, Pl.'s Resp.), and Defendants filed a Reply (Doc. 102, Defs.' Reply). Defendants also filed a Motion for Partial Judgment on the Pleadings (Doc. 86), to which Plaintiff filed a Response (Doc. 93), and Defendants filed a Reply (Doc. 103). Plaintiff brings two separate claims: 1) Employment Discrimination Based on Sex in Violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended 42 U.S.C. § 2000e *et seq.*; and 2) Harassment Based on Sex in Violation of Title VII. Although requested, the Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants summary judgment on Plaintiff's claim of Harassment Based on Sex and denies summary judgment on Plaintiff's Employment Discrimination claim.

## I.    BACKGROUND

The following facts are undisputed unless otherwise indicated. Plaintiff Catherine Beardsley, a female, brings employment-related sex discrimination claims against her former employer, OFSS, as well as Oracle. Oracle is the majority owner of OFSS, which is part of Oracle's Financial Services Global Business Unit ("FSGBU") and provides information technology solutions to customers in the financial sector. Plaintiff alleges that she was harassed and terminated because of her gender. Defendants argue that there was no harassment and OFSS terminated her employment due to poor performance.

### A.    Plaintiff's Employment History with Defendant

OFSS hired Plaintiff on December 15, 2011 as an Application Sales Representative ("ASR"). There is some dispute as to who participated in the hiring process. Defendants contend that Prince Varma, Area Vice President, interviewed Plaintiff and supported her hiring, and that Plaintiff reported to Mr. Varma when she started at OFSS. (Doc. 85, Defendant's Statement of Facts ("DSOF") ¶¶ 3-4.) Plaintiff contends that she first interviewed with Mr. Varma as a formality three weeks after starting at OFSS, and that she did not report to him for an additional 6 months. (Doc. 99, Plaintiff's Separate Statement of Facts ("PSOF") ¶ 2, Ex. 2 ¶ 3.) There is also conflicting testimony regarding the timing of Plaintiff's reporting to Jason Yesinko, but the parties appear to agree that she reported to Mr. Yesinko in FY17, prior to the reorganization of the Sales Team (DSOF ¶ 6; PSOF ¶¶ 4, 41, Ex. 2 ¶ 6.) After the reorganization, at the beginning of FY18, Plaintiff continued to report to Mr. Yesinko as part of a smaller team that sold a subset of Oracle Financial Services Analytical Applications ("OFSAA") products. (DSOF ¶ 6; PSOF ¶ 41.)

### B.    OFSS's Performance Metrics

The ASRs' ability to meet their annual sales target is OFSS's primary performance metric. ASRs also have a "pipeline," which lists their projected business opportunities. Because ASRs typically close only 20-25% of the potential deals in their pipeline, they are required to maintain pipeline opportunities that amount to at least four times their annual sales quota.

### C.  Plaintiff's Performance FY14-FY16

The parties agree that Plaintiff exceeded her sales quotas of $2,761,637 in FY14 and $3,308,490 in FY15, but there is some dispute as to the exact numbers. Defendants contend that Plaintiff made sales of $3,308,490.80 in FY14 and $3,484,250 in FY15, while Plaintiff contends that she made sales of $4,036,367.50 and $4,250,790.81 respectively. (DSOF ¶ 10; PSOF ¶ 8.)

Both parties agree that Plaintiff did not meet her sales quota of $3,118,320 in FY16 but Defendants claim Plaintiff made sales of $2,306,492, while Plaintiff contends that it was $2,817,523. (DSOF ¶ 11; PSOF ¶ 8.) Mr. Yesinko testified that the drop in Plaintiff's sales particularly concerned Defendants because her sales came from two deals that Plaintiff received from the Sales Department, which both required "significant sales management support." (DSOF ¶ 12, Ex. 1 at 137:9-146:13.) Plaintiff contends that despite the drop in her sales, she was one of the top sales leaders in FY16, both Mr. Yesinko and Mr. Varma gave her positive reviews for the year, and that receiving opportunities from the Sales Department was per OFSS's policies. (PSOF ¶¶ 6, 9-10.)

In addition to not meeting her sales quota, Defendants contend that there were other issues with Plaintiff's performance that started in FY16. Oracle and OFSS employees complained to management about her sales abilities and Mr. Varma had to provide Plaintiff with more support on a deal with Citi Corp. than should have been necessary for a senior employee. (DSOF ¶¶ 21-23, Ex. 1 at 257:20-258:24, Ex. 4 at 86:14-20; 88:3-89:6.) Additionally, in the summer of 2016, Plaintiff received marks of "below expectations" in a sales training program where she gave a mock sales pitch to Oracle and OFSS managers. (DSOF ¶ 24, Ex. 3.) Finally, Oracle's outside partner, Lombard Risk, expressly requested that Plaintiff not be used on a sale, citing her subpar sales ability. (DSOF ¶ 25, Exs. 8, 9.)

Plaintiff either disputes these contentions or argues that she was not made aware of them, which left her unable to improve her performance and illustrated that management was either unconcerned or failed to provide her with the necessary support. (PSOF ¶ 3.) Regarding the Citi Corp. deal, Plaintiff notes that Mr. Varma praised her ability to use the

Deal Approval System ("DAS") and contends that Mr. Varma's level of involvement was appropriate because the buyer was his former boss. (PSOF ¶ 28.)

### D.   Plaintiff Placed on Performance Improvement Plan ("PIP") in FY17

Plaintiff had a sales revenue quota for FY17 of between $2.4 and $2.6 million. (DSOF ¶ 16; Plaintiff's Response to DSOF ¶ 16.) At the end of the first quarter of FY17, her pipeline was $4,1000,000, and her total sales were $484,000. On October 19, 2016, Mr. Yesinko placed Plaintiff on a PIP, which listed multiple areas of concern, including Plaintiff's inadequate pipeline, insufficient customer activity, failure to meet sales goals in 2016, poor execution of the elevator pitch in summer 2016, and inadequate presentation at the Sales Kickoff meeting in Montreal. (DSOF ¶ 16, Ex. 7.) Mary Mowry, the only other female on the Sales Team at the time, was also placed on a PIP. The parties dispute the exact numbers but agree that the PIP required Plaintiff to maintain a pipeline of four times the amount of her revenue quota as well as to provide reporting and deal status updates to her supervisors. (DSOF ¶¶ 16-17; Plaintiff's Response to DSOF ¶ 16.)

### E.   Failure to Close Citizens Deal, Termination, and Aftermath

The facts surrounding OFSS's failure to close the Citizens deal and the aftermath are disputed by the parties. However, the parties agree that Plaintiff spent a significant amount of her time on the $3 million deal, which was worth substantially more than the average sale. (DSOF ¶ 17; PSOF ¶ 27.)

At the end of May 2017, Citizens informed OFSS that they would not sign the deal as structured. OFSS, including Plaintiff, continued to negotiate with Citizens. (PSOF ¶ 33, Exs. 4, 18.) Soon after, on June 30, 2017, Mr. Yesinko, along with Mr. Varma and Human Resources employees, decided to terminate Plaintiff's employment, citing her failure to meet the requirements of her PIP as well as her failure to meet both her sales quota and maintain sufficient pipeline opportunities. (DSOF ¶ 30.) Defendants contend that after Plaintiff's termination, Mr. Varma and Mr. Yesinko reached an agreement with Citizens on a completely restructured deal. (DSOF ¶ 32, Ex. 1 at 237:18-239:17.) Plaintiff contends

that while certain aspects of the deal changed, the majority of it stayed the same. (PSOF ¶ 36, Exs. 19, 20.)

OFSS hired two men, Mike Mango and Tom List, to replace Plaintiff and Ms. Mowry but terminated Mr. List quickly; Mr. Varma described him as a "horrible hire and bad salesperson." (DSOF ¶ 51, Ex. 4 at 172:3-25; PSOF ¶ 54.) Defendants contend Mr. Varma attempted to hire female employees for the open positions, but none were interested. (DSOF ¶ 31.) Plaintiff disputes this, contending that Oracle's recruiting department conducted the hiring process and did not account for diversity. (PSOF ¶ 53.)

### F. Similarly Situated Male Employees

Plaintiff contends that Defendants treated the male ASRs more favorably than the female ASRs. Specifically, Joe Sinzer, Bijan Olfati, Marcos Laredo, and James Simpson, who worked as ASRs with Plaintiff and Ms. Mowry, underperformed their sales goals but either did not face disciplinary action or were given more leeway. Defendants contend that two of the men were not similarly situated and that there are valid explanations for any alleged discrepancies in treatment, including that the men were placed on PIPs at a later date, resigned, or requested to transfer to another division within the company.

Plaintiff further contends that OFSS male managers treated the female ASRs unprofessionally, with hostility, and worse than their male counterparts. She additionally alleges that OFSS fostered a male dominated culture that made her and Ms. Mowry feel uncomfortable. (PSOF ¶¶ 37-40.) Defendants dispute Plaintiff's characterization of the meetings and denies that OFSS has any type of male dominated culture.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the

outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.  ANALYSIS

### A.  Plaintiff's Title VII Claim of Discrimination Based on Sex

Defendant first moves for summary judgment as to Plaintiff's Title VII claim for Employment Discrimination Based on Sex. (Defs.' MSJ at 6.)

#### 1.  Title VII Sex Discrimination Legal Standard

Under Title VII, an employer may not "discriminate against an individual with respect to [her] . . . terms, conditions, or privileges of employment" because of her sex. 42 U.S.C. § 2000e–2(a). "This provision makes 'disparate treatment' based on sex a violation of federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62 (9th Cir. 2002). "As a general matter, the plaintiff in an employment discrimination action need

produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000).

In order to show disparate treatment under Title VII, Plaintiff must first establish a *prima facie* case of discrimination as the United States Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Specifically, she must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802). The degree of proof necessary to establish a *prima facie* case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (internal citations and quotations omitted).

"If the plaintiff establishes a *prima facie* case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. . . . If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (internal citations and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate pretext, but such evidence must be both specific and substantial. *Id.* At the last step, if the plaintiff can show pretext, the only remaining issue is whether discrimination occurred or not. *Id.*

## 2.    Plaintiff Has Established a *Prima Facie* Case

Defendants do not contest that Plaintiff meets the first three prongs to establish a *prima facie* case but argue that she fails to meet the fourth prong because she was not treated differently than similarly situated male employees. The Court disagrees. Plaintiff has proffered sufficient evidence of disparate treatment; specifically, she has demonstrated that the four male ASRs with similar sales numbers were not terminated or placed on PIP at the same time as Plaintiff and Ms. Mowry. Because the majority of Plaintiff's evidence

of pretext consists of OFSS treating similarly situated male employees more favorably, the Court will analyze the evidence and Defendants' counterarguments in more detail when discussing pretext, where Plaintiff has a higher burden of proof. *See Hawn v. Exec. Jet Management, Inc.*, 615 F.3d 1151, 1159 (9th Cir. 2010) (explaining that analysis of similarly situated employees may be relevant to both plaintiff's *prima facie* case and at the pretext stage).

Plaintiff may also meet the fourth prong of the *prima facie* case by showing that "her position was filled by a man." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802). Plaintiff and Ms. Mowry were both replaced by men, Mike Mango and Tom List; therefore, Plaintiff could also establish the fourth prong of a *prima facie* case on this basis.

### 3.     Defendant Has Articulated Some Legitimate, Nondiscriminatory Reason

The burden of production then moves to Defendants to articulate some legitimate, nondiscriminatory reason for the challenged action. *Villiarimo*, 281 F.3d at 1062. Defendants produced evidence that Oracle terminated Plaintiff because of her sales numbers and failure to meet the conditions of her PIP. Plaintiff only attained 19% of her sales target in FY17 and did not maintain sufficient business opportunities in her pipeline for FY18. Defendants testified that Plaintiff needed more support to complete sales than should have been necessary for a salesperson with her experience and gave Plaintiff multiple warnings that her performance was unsatisfactory, including placing her on PIP. While Plaintiff contests many aspects of Defendants' rationale for her termination, there is sufficient evidence that OFSS had legitimate, nondiscriminatory reasons for its decision.

### 4.     Plaintiff Has Established a Material Factual Dispute as to Whether Defendants' Reason was Pretext

The burden now shifts back to Plaintiff to show Defendants' articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation

is unworthy of credence." *Chuang*, 225 F.3d at 1123. "Direct evidence is evidence, which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) (internal citation and quotations omitted). Where direct evidence is unavailable, a plaintiff may provide circumstantial evidence to show that the defendant's explanation for the challenged action was mere pretext for discrimination. "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Here, Plaintiff has proffered specific and substantial circumstantial evidence that Defendants' reasoning for terminating Plaintiff's employment was mere pretext for discrimination. Plaintiff and Ms. Mowry, who were the only two females on their sales team, were the only two ASRs placed on PIP on October 19, 2016 and the only ASRs terminated on June 30, 2017. Plaintiff has produced substantial evidence that male employees with similar sales numbers were not placed on PIPs or terminated within that same timeframe. She also has proffered evidence that male managers at OFSS treated her and Ms. Mowry worse than they treated the male employees. Defendants argue that there are reasonable explanations for these discrepancies in Oracle's employment decisions and deny Plaintiff's allegations of mistreatment of the female ASRs. While a jury could believe these explanations, it could also infer from the evidence that male ASRs were given more leeway and held to lower or different standards than Plaintiff and Ms. Mowry. Viewed most favorably to Plaintiff, the evidence creates a material issue of fact as to whether Plaintiff's gender played a role in OFSS's decision to terminate her employment.

### a. Similarly Situated Male Employees

#### i. Joe Sinzer

Joe Sinzer was a male ASR who sold the same products as Plaintiff and reported to Mr. Varma and Mr. Yesinko. In FY16 Plaintiff made $2,817,532 worth of sales whereas Mr. Sinzer's total sales were $495,000. (PSOF ¶ 54; DSOF, Ex. 15.) In the first quarter of

FY17 Mr. Sinzer and Plaintiff had comparable sales numbers; he achieved 19.25% of his sales goal and Plaintiff met 18.25% of her quota. (PSOF ¶ 17, Ex. 9.) However, OFSS did not put Mr. Sinzer on a PIP until June 2017, 8 months after Plaintiff and Ms. Mowry were put on PIPs. (PSOF ¶ 47, Ex. 5; DSOF Ex. 14.) Mr. Sinzer eventually resigned his employment later that year. (PSOF ¶ 47, Ex. 4.)

Defendants argue that Mr. Yesinko did not place Mr. Sinzer on PIP at the same time as Plaintiff and Ms. Mowry because Mr. Sinzer's pipeline of potential opportunities was $23,773,013. When Mr. Sinzer's pipeline decreased, Mr. Yesinko placed him on PIP and he ultimately resigned. This reasoning ignores that Mr. Sinzer, unlike Plaintiff, had extremely poor sales numbers in FY16. He then failed to show improvement in the first quarter of FY17. While Mr. Sinzer may have maintained a strong pipeline, there is at least a factual dispute as to why OFSS put Plaintiff and Ms. Mowry on PIPs but waited an additional 8 months to do the same for Mr. Sinzer.

Defendants further contend that the PIP was non-disciplinary and instead meant to support Plaintiff in improving her sales performance. However, Defendants expressly cite Plaintiff's failure to meet the PIP's requirements as a reason for her termination and initially placed her on the PIP due to her underperformance. Even if OFSS did not intend the PIP to be punitive, there is sufficient evidence that it negatively impacted Plaintiff's employment, particularly in light of Plaintiff's evidence that she could have closed the Citizens deal with more time. (PSOF ¶¶ 33, 36.) At the summary judgment stage, the Court views the evidence in favor of the non-moving party and thus finds that Defendants' placing the women on PIP but not Mr. Sinzer is evidence of disparate treatment. *Celotex Corp*, 477 U.S. at 322–23.

### ii.        Bijan Olfati

Likewise, Plaintiff contends Bijan Olfati was a similarly situated employee who underperformed by only attaining 86.41% of his sales goals in FY17. Defendants argue that he was not similarly situated because he was in a managerial role for FY16 and only became an ASR in FY17 after Plaintiff was placed on PIP. If Mr. Olfati had remained in a

managerial role, Defendants would be correct; however, once he became an ASR, he was similarly situated to Plaintiff and Ms. Mowry. *See Vasquez*, 349 F.3d at 642 ("Employees are similarly situated when 'they have similar jobs and display similar conduct'"). While the timeline of his employment as an ASR did not perfectly line up with Plaintiff's employment, Oracle's handling of his underperformance as an ASR is relevant to the inquiry of whether similarly situated male employees received preferential treatment.

Defendants additionally argue that Mr. Olfati reaching 86.41% of his sales goals was far better than Plaintiff's attainment of 18.25%. However, Defendants expressly cite Plaintiff's FY16 sales numbers, where she did not meet her sales target but had a higher attainment than Mr. Olfati did in FY17, as a factor in both their decision to put her on a PIP as well as their decision to terminate her employment. (Defs.' Reply at 6; DSOF ¶ 12, Ex. 7.) Therefore, Mr. Olfati's failure to meet his sales goals and OFSS's inaction are evidence of OFSS's favorable treatment of male ASRs.

### iii.    Marcos Laredo

Marcos Laredo reported to Mr. Varma and sold the same products as Plaintiff. He did not make a sale in the first quarter of FY17 but, unlike Plaintiff and Ms. Mowry, was not placed on a PIP. Mr. Laredo ultimately attained just 5.67% of his sales goals for the fiscal year, but Oracle did not take any action with regards to his employment and he eventually transferred to a different sales division in April 2017. He was ultimately placed on a PIP and subsequently terminated by a different manager. Plaintiff contends, and the Court agrees, that this is evidence of disparate treatment of Mr. Laredo.

Defendants argue that Mr. Laredo was not similarly situated because he worked on a different sales team and sold products in Mexico. The Court disagrees. Mr. Laredo was on Mr. Varma's sales team, sold the same products as Plaintiff, and participated in the same team meetings. (PSOF ¶ 50.) *See Vasquez*, 349 F.3d at 642. In the alternative, Defendants argue that Mr. Laredo was not treated more favorably than Plaintiff; rather, Mr. Varma planned to fire Mr. Laredo in April 2017 but did not because Mr. Laredo was scheduled to transfer to a different division. However, this neither explains why Mr. Varma did not place

Mr. Laredo on a PIP in October 2016 nor why Mr. Varma could not fire Mr. Laredo prior to his transfer. Defendants do not cite an OFSS policy that prohibits terminating employees who are scheduled to transfer.

### iv.      James Simpson

Plaintiff proffers evidence that she and Mr. Simpson had similar sales numbers in FY17, but Mr. Simpson received verbal counseling instead of being placed on PIP and then was permitted to transfer to another division. (PSOF ¶ 51.) Defendants argue that verbal counseling is not more favorable than PIP and that Oracle permitting Mr. Simpson to transfer is irrelevant because Plaintiff never requested the opportunity to transfer to another division. (Defs.' Reply at 3-4, 9.) However, Mr. Varma's verbal counseling of Mr. Simpson convinced him to transfer, which ultimately prevented his firing. *See* Defs.' Reply at 9 ("James Simpson was on Varma's team for a short time and, when he sold nothing, Varma convinced him he had no future in sales and he quickly transferred to a non-sales position.").[1] On the contrary, there is no evidence that Plaintiff was informed that she could transfer to a new role; in fact, she contends that OFSS discouraged seeking transfer and consistently failed to give her feedback that could have helped her improve her performance and prevent her firing. (PSOF ¶¶ 24, 30, 52, Ex. 3 at 188:18-21, Ex. 6 at 115:25-116:22; 143:5-8, Ex. 17.) Defendants will of course have the opportunity to present any explanations for OFSS's alleged favorable treatment of male ASRs at trial; however, at this stage, their explanations merely create an issue of fact and are insufficient to prevail on summary judgment.

### b.      Hostile Treatment of Female Employees

Plaintiff additionally produced evidence that male managers at OFSS treated female ASRs with hostility on multiple occasions. Ms. Mowry testified that it was a "toxic, hostile work environment" for women, and that one on one meetings with managers were like "beatings." Importantly, male ASRs did not experience this treatment. (PSOF ¶ 37, Ex. 6

---

[1] Mr. Simpson was on Mr. Varma's team for the entirety of FY17. Plaintiff disputes Defendants' contention that this constitutes a "short time." (Plaintiff's Response to DSOF ¶ 47.)

at 117:5-18; 118:12-18; 120:4-11.) She further testified that on multiple occasions, male employees, including Mr. Sinzer and Mr. Inggs, commented that Ms. Mowry and Plaintiff were treated unprofessionally and with hostility. (PSOF ¶ 39, Ex. 6 at 134:1-136:4.) Additionally, Plaintiff testified that Carl Morath, a male employee working at the FSGBU, informed her that Mr. Varma had "disparaged" her at management meetings. (PSOF ¶ 38, Ex. 3 at 196:21-197:18.)

While this evidence on its own would be insufficient to sustain an employment discrimination claim under Title VII, it adds context to Plaintiff's evidence that underperforming male ASRs were given more leeway than the female ASRs with similar sales numbers. If believed by a jury, it illustrates male managers' animosity towards the female ASRs, which provides a basis for both failing to place similarly underperforming male managers on PIPs and not terminating their employment. at the same time as Plaintiff and Ms. Mowry.

Defendants argue in their Reply that Plaintiff did not produce evidence to support her statement that male managers were "brutal, unprofessional, negative, and confrontational." The Court disagrees. Ms. Mowry testified to witnessing and being subjected to this behavior in her deposition and identifies other OFSS employees who commented on the male managers' unprofessional conduct. Defendants also contend that the evidence of male employees commenting on the unprofessional behavior as well as Plaintiff's testimony that a sales manager informed her that Varma disparaged her cannot be considered on summary judgment because it is inadmissible hearsay. However, when considering evidence proffered to avoid summary judgment, the Court focuses on content over form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *see also Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, No. CV-11-00150-PHX-JAT, 2014 WL 4371284, at *3 (D. Ariz. Sep. 4, 2014). Plaintiff and Ms. Mowry both identified the OFSS employees who

allegedly made the statements. If these employees testified to their statements at trial, the evidence would be admissible. (PSOF ¶¶ 38-39, Exs. 3, 6.)

### c.     The Same Actor Theory Does Not Apply to Create an Inference in Favor of Defendant

The Court will not apply the same-actor inference to Mr. Varma or Mr. Yesinko because Plaintiff has proffered sufficient evidence to create an issue of material fact as to whether either of them participated in Plaintiff's hiring or any other favorable employment decision. Under the doctrine of same actor inference, "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (1996). This is centered around the idea that there will rarely be sufficient evidence that "…the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005).

Defendants argue that the inference applies because Mr. Yesinko and Mr. Varma were involved both in Plaintiff's hiring as well as her termination. Defendants cite Mr. Varma's deposition testimony that he participated in Plaintiff's hiring; however, Plaintiff contends in her Response that Mr. Varma did not play a role in her hiring and did not even interview her until three weeks after she started at Oracle. (Defs.' MSJ at 14; DSOF ¶ 5, Ex. 4 at 38:13-39:15; Pl.'s Resp. at 13; PSOF ¶¶ 1-2, Ex. 2 ¶ 3.) Notably, Defendant does not dispute Plaintiff's contention in its Reply. The same actor theory only applies when the same person who fired the plaintiff also participated in her hiring or a different favorable employment action. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (1996). Plaintiff has at least proffered sufficient evidence to create an issue of material fact as to whether Mr. Varma hired her; therefore, the same actor inference does not apply in Mr. Varma's favor.

Similarly, Plaintiff has proffered sufficient evidence to create a material issue of fact as to whether the same actor inference should apply to Mr. Yesinko. Defendants contend that when Mr. Yesinko was promoted to a "player-coach role, he selected Plaintiff for his team, which is equal to a favorable employment decision." (Defs.' MSJ at 14.) Plaintiff counters that Mr. Yesinko did not personally select her for his team; rather, she and the other ASRs who reported to him prior to his promotion continued to report to him because it made the most logistical sense. (Pl.'s Resp. at 14; PSOF ¶ 41.) Plaintiff also contends the new role did not illustrate favorable treatment because she did not receive a raise, inherit more responsibility, or receive any other benefit. *Compare with Coghlan*, 413 F.3d at 1097-98 (holding that although new role was not classified as a promotion, the same-actor inference applied where employee's new position included a raise as well as more responsibility).

Defendants do not dispute that Plaintiff did not incur any benefit from her placement on Mr. Yesinko's team. However, they still argue that because of Mr. Yesinko's desire to have Plaintiff on his team, the inference should apply. The parties have not provided sufficient case law as to whether the inference applies where a defendant requests plaintiff for a position, but the plaintiff does not receive a benefit from her new role. Furthermore, there is an issue of fact as to why and whether Mr. Yesinko actually requested Plaintiff for his team after his promotion. Therefore, for the purposes of summary judgment, Mr. Yesinko will not receive the benefit of the same actor inference.

For all of these reasons, the Court will deny Defendants' request for summary judgment on Plaintiff's Title VII claim of discrimination based on sex.

## B.    Plaintiff's Title VII Claim of Sexual Harassment

Plaintiff's second cause of action alleges that Defendants subjected her to sexual harassment based on a sexually hostile work environment.

### 1.    Title VII Sexual Harassment Legal Standard

To state a Title VII claim of sexual harassment based on a sexually hostile work environment, Plaintiff must produce evidence sufficient to show that: 1) she was subjected

to verbal or physical conduct of a sexual nature; 2) this conduct was unwelcome; and 3) that the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive working environment. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). In assessing the third factor, the conduct must be severe and pervasive enough to both subjectively and objectively create an abusive environment. *Id.* While there is no exact test to determine whether the environment is objectively abusive, factors to consider include the frequency and severity of the conduct. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993). Although "an isolated incident of harassment by a co-worker will rarely . . . give rise to a reasonable fear" that the harassment is a permanent condition of employment, an employer may be liable if the plaintiff shows that she feared she "would be subject to such misconduct in the future because . . . [defendant] tolerated" the harasser's conduct. *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000). "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action," one may infer that the employer has "'adopt[ed] the offending conduct.'" *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (alteration in original) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998)). However, the employer cannot be liable for "misconduct of which it is unaware." *Id.*

### 2.    Plaintiff Failed to Proffer Evidence Sufficient to Support a *Prima Facie* Case

The Court already discussed the majority of Plaintiff's evidence of sexual harassment, which focuses on the Oracle managers treating her and Mowry "brutally" in meetings and worse than the male ASRs. *See supra* III.A.5.b. Additionally, Plaintiff alleges that the Sales Team had a male dominated culture, citing the use of foul language such as "Cluster F… [which was] offensive and its imagery is sexual in nature," as well as activities around the consumption of alcoholic beverages. (PSOF ¶ 40, Ex. 2 ¶ 7, Ex. 3.) Plaintiff contends that Mr. Varma's and Mr. Yesinko's behavior caused her such fear that she did not submit legitimate business expenses for reimbursement. (PSOF ¶ 40, Ex. 3.)

Plaintiff's evidence is insufficient to meet both the first and third elements of a *prima facie* case. Plaintiff does not provide any evidence supporting her contention that Defendant's conduct was of a sexual nature. The majority of her evidence consists of Ms. Mowry's testimony that male managers spoke to the female ASRs unprofessionally, with hostility, and treated them worse than the male ASRs. Plaintiff does not provide any specific examples of the language used, but there is nothing to suggest that it was of a sexual nature. This type of non-specific evidence is insufficient to defeat summary judgment. *See Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2013 WL 6157858 at *11 (D. Ariz. Nov. 25, 2013) (granting defendant's motion for summary judgment where the plaintiff's evidence focused on "non-specific descriptions of [defendant's] tone, raised voice, or yelling" but failed to identify "specific epithets, derogatory language, profanity, or demeaning language of any kind that would support her claim of sex harassment"). There, the court also held that evidence of defendant's disparate treatment of male employees was insufficient to prove that the conduct was sexual in nature. *Id.*

In the two instances where Plaintiff did allege specific misconduct, she does not provide evidence that the incidents were of a sexual nature. There is nothing in the Record to support Plaintiff's contention that Mr. Yesinko's use of the word "Cluster F…" had a sexual connotation. Indeed, Plaintiff testified that he used the word to describe a meeting with other Oracle managers. (PSOF Ex. 3 at 156:4-6.) Similarly, Plaintiff does not provide evidence that when Mr. Varma spoke poorly of her in the meeting, it was sexual in nature. While Mr. Yesinko's and Mr. Varma's language may have been offensive, the use of non-sexual, offensive language is insufficient to meet the evidentiary burden for a Title VII harassment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding "mere offensive utterance" or "sporadic use of abusive language" insufficient to support a claim of harassment under Title VII).

Likewise, Plaintiff has failed to raise a genuine issue of material fact regarding whether Defendants' conduct was so severe or pervasive as to alter the conditions of her

employment and create an abusive working environment. *Fuller*, 47 F.3d at 1527. Plaintiff personally testified to one isolated incident where she learned Mr. Varma had spoken poorly of her behind her back and additionally testified that employees consistently used inappropriate language. Notably, Plaintiff herself acknowledged using inappropriate language. (DSOF ¶ 62, Ex. 3 at 197:25-198:18). Plaintiff also proffered evidence through Ms. Mowry's deposition that there were multiple instances where the women were "subjected to public reprimand and embarrassment in sales meetings in ways that were clearly adverse and different compared to their male peers." (Pl.'s Resp. at 16; PSOF ¶¶ 37, 39, Ex. 6.) These incidents neither constitute severe nor pervasive conduct that would create an abusive working environment for Plaintiff. Indeed, the Ninth Circuit has held that defendants' conduct was not "severe and pervasive" in cases where defendants' behavior was far worse than is alleged here. *See e.g. Manatt v. Bank of America, N.A.*, 339 F.3d 792, 799 (9th Cir. 2003) (holding that defendant's directing of multiple racial epithets at plaintiff did not qualify as objectively abusive and did not pollute the workplace to the point of altering conditions of employment); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (holding defendant's conduct neither pervasive nor severe where he made multiple sexual comments about other employees in front of the plaintiff and referred to the plaintiff as "Medea" after she complained); *Drottz*, 2013 WL 6157858 at *13 (holding that male supervisor's "stray remarks" and multiple instances of verbal criticism related to the plaintiff's job performance did not constitute pervasive conduct).

In sum, Plaintiff has failed to proffer evidence sufficient to show a genuine issue of material fact for a *prima facie* case. Accordingly, the Court will grant summary judgment to Defendants on Plaintiff's Title VII claim of a hostile work environment based on sex-based harassment.

### 3.      Defendants' Motion for Judgment on the Pleadings

In addition to the Motion for Summary Judgment, Defendants filed a Motion for Judgment on the Pleadings, arguing that Plaintiff's sexual harassment claim should be dismissed due to a failure to exhaust administrative remedies. Because the Court will grant

Defendants' Motion for Summary Judgment on that claim, Defendant's Motion for Judgment on the Pleadings is denied as moot.

### 4.     Oracle Properly Named as Defendant

Defendants argue in a footnote that Plaintiff improperly named Oracle Corporation as a defendant because OFSS, not Oracle, was Plaintiff's employer and Plaintiff did not make any specific allegations against Oracle in its Complaint. (Defs.' MSJ at 1 n.1.) Plaintiff counters that Mr. Varma, who was Plaintiff's supervisor and participated in her firing, was an employee of Oracle; therefore, Oracle qualifies as a joint employer and was properly named as a defendant. The Ninth Circuit applies the "common-law test" to determine joint-employer status, which looks at "the extent of control that one may exercise over the details of the work of the other." *U.S. Equal Emp't. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 638 (9th Cir. 2019). Defendants do not dispute that Mr. Varma had substantial control over Plaintiff's employment during the majority of her time at OFSS. Because Mr. Varma was an employee of Oracle and Oracle was the majority owner of OFSS, the Court holds that Oracle had sufficient control to qualify as a joint employer. Defendants' motion for summary judgment to dismiss Oracle as a defendant is denied.

**IT IS THEREFORE ORDERED** denying in part and granting in part Defendants Oracle and OFSS's Motion for Summary Judgment (Doc. 84);

**IT IS FURTHER ORDERED** granting Defendants Oracle and OFSS's Motion for Summary Judgment Re: Sexual Harassment (Doc. 84);

**IT IS FURTHER ORDERED** denying Defendants Oracle and OFSS's Motion for Summary Judgment Re: Employment Discrimination (Doc. 84);

**IT IS FURTHER ORDERED** denying Defendants Oracle and OFSS's Motion for Summary Judgment Re: Oracle as named Defendant (Doc. 84);

**IT IS FURTHER ORDERED** denying as moot Defendants Oracle and OFSS's Motion for Partial Judgment on the Pleadings (Doc. 86).

1    **IT IS FURTHER ORDERED** that the remaining claim will proceed to trial, and

2    the Court will set a pre-trial status conference by separate Order.

3    Dated this 16th day of December, 2020.

4

5    Honorable John J. Tuchi
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28